DECISION
This is a petition for relief from the assessment of taxes against the petitioner for real estate in the City of Providence pursuant to G.L. 1956 (1999 Reenactment) § 44-5-26.
The petitioner was the record owner on December 31, 1993 of two parcels of improved real property in the City of Providence. They are described by the assessor as Lots 22 and 169, respectively, on Assessor's Plat 20. Lot 22 was originally assessed for 1994 at $3,780,600, and Lot 169 was assessed at $3,728,600. On April 28, 1995 at the request of the tax-payer the assessor reviewed each of these assessments and ordered no change. On October 16, 1995 the board of tax assessment review (hereinafter "the board") ordered that the assessed value of the improvements on each of the respective parcels, as appraised in the 1987 revaluation, be reduced for depreciation due to economic conditions by an additional twenty-five percent in 1994 for one year. The result was that the assessment of Lot 22 was reduced to $l,032,800 and Lot 169 to $l,927,000, both for 1994 only. The tax-payer did not petition for judicial review of the 1994 limited assessment.
The vagaries of the assessment and assessment review calendar affect the further analysis of the history of the challenged assessment for 1995.
On December 31, 1994, the one year adjustment retrospectively applied by the board in 1995 came to an end. The assessment reverted to the December 31, 1992 amounts. Lot 22 was again assessed at $2,975,100 and Lot 169 at $3,728,600. Obviously, on December 31, 1994 and in March or April of 1995, when tax rolls were certified, neither the tax-payer nor the assessor could know that the board would retrospectively reduce the 1994 tax assessment on October 16, 1995.
On November 22, 1995 the tax-payer appealed the increased assessment for 1995 to the board. On its review the board decided to increase the deduction for depreciation of the subject improvements for "economic conditions" by only six percent instead of the twenty-five percent it had allowed for the preceding year. As a result, on October 1, 1996, the 1995 assessment for Lot 22 was reduced to $2,509,000 and Lot 169 to $3,296,000.
The plaintiff contends that these 1995 assessments exceed the full and fair cash values of these parcels. He says that because there has been no evidence of any favorable physical or economic change to the improvements between December 31, 1993 and December 31, 1994, the assessor is not justified in failing to apply the same discounts in 1995 as he did in 1994. He also argues that, as to each parcel, the 1994 assessment is evidence of the value in 1995, and that, even if the assessor is not bound by his prior year's assessment, the petitioner has satisfied his burden of proof on his petition and the burden has shifted to the assessor to justify the increased assessment.
The assessor has offered some evidence of the full and fair cash value of the real estate. He shows that in 1988, pursuant to the 1987 revaluation, Lot 22 was appraised at $3,780,600 and Lot 169 at $4,449,300. Those appraisals were reduced in 1990 to $2,975,100 and $3,728,600, respectively. It was from those 1990 reduced valuations that the plaintiff sought relief in 1994, which was not granted until 1995 for taxes in 1994. He also shows that at various times in his applications for tax relief the plaintiff has asserted that he paid $5,200,000 for Lot 169 and that for Lots 22 and 25 he paid $7,600,000 in July 1988. Apparently, portions of the improvement occupy both lots 22 and 25 on assessor's plat 20.
Finally, the tax-payer asks the Court to consider an anomaly in the assessor's records. The board's adjustment to the 1995 assessments on October 1, 1996 is, like the adjustments to the 1994 tax, to be for one year only. See: Defendant's Exhibits D and N, respectively. As a consequence, when the one year adjustments to the 1995 assessments expired at the end of that year, the assessor on November 18 and 5, 1997 reverted to the 1994 assessments for the 1996 tax year, even though those had been for only one year. See: Defendant's Exhibit F and P. As a consequence, the assessment for 1995 resembles a spike in an otherwise level continuing line of assessments from 1994 to 2000, except for 1995. According to the plaintiff, the continuing regular assessment is some evidence that the 1995 assessments exceed the full and fair cash value of the improvements.
The defendant contends that the reversions in November 1997 were in error. When the assessor reverted to the 1994 assessments, they should have been reverted to the 1993 assessments, according to the defendant. There is, however, no explanation for the fact that the assessor has continued the "erroneous" assessments to this very day in spite of the pendency of this litigation since 1996.
A strict mechanical application of logic to the assessments in 1995 would seem to require that the 1994 assessments not be changed. If there was no value enhancing change to the real estate between December 31, 1993 and December 31, 1994, it should follow that the assessments should not increase. What such an analysis omits is that the reduced assessments in 1994 were an act of grace by the board, expressly limited to a single year. The increase in the depreciation factor of twenty-five percent was purely arbitrary and served to award the tax-payer a temporary "abatement" to meet a purely transitory situation. The 1995 "abatement" was less than the one granted for 1994, but it was also a pure grant of a temporary act of grace. The perpetuation of the 1994 abatements in the years after 1995 was the product of the sheerest bureaucratic ineptitude. The board was not bound prospectively in 1995 by its act of grace for 1994, nor is the assessor bound retrospectively in 1995 by his error in 1997 and thereafter. The obviously arbitrary and erroneous assessments both before and after the 1995 assessments are in no way competent or credible evidence of the full and fair value on December 31, 1994 of the real estate here in question.
In the absence of any competent, credible and probative evidence of the full and fair cash value of each of these parcels of real estate, other than the patently arbitrary and clearly erroneous assessments, the petitioner has failed to carry his burden of showing that the 1995 assessments exceed the full and fair cash value of the two parcels on December 31, 1994.
Accordingly, judgment will enter for the respondent